Robin B. Cheatham, Esq.
Northern District of Texas Bar No. 18036
Scott R. Cheatham, Esq.
Texas Bar No. 24050406
Adams and Reese LLP
4500 One Shell Square
New Orleans, Louisiana 70139
Phone: (504) 581-3234
Fax: (504) 566-0210
robin.cheatham@arlaw.com

*Attorneys for Eucla Investments Limited*

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| Amshale Energy, LLC, A Texas limited | § | CASE NO. 16-33754-SGJ-11 |
| liability company | § | |
| | § | |

**MEMORANDUM OF LAW IN SUPPORT OF EUCLA INVESTMENTS
LIMITED'S MOTION FOR ENTRY OF AN ORDER DISMISSING THE
DEBTOR'S CHAPTER 11 CASE WITH PREJUDICE PURSUANT TO
SECTIONS 1112(b) AND/OR 305(a) OF THE BANKRUPTCY CODE**

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

JURISDICTION AND VENUE ........................................................................................... 3

FACTUAL BACKGROUND ................................................................................................ 3

    A.  The Loan and Guaranty Agreement ...................................................................... 3

    B.  The Pledge Agreement ........................................................................................... 5

    C.  Debtor's Initial Nonpayment and Extension of the Maturity Date ..................... 6

    D.  The Debtor Fails to Satisfy its Loan-Related Obligations .................................. 7

    E.  The Bankruptcy Case ............................................................................................. 8

ARGUMENT ....................................................................................................................... 10

I.  THIS CASE MUST BE DISMISSED FOR "CAUSE" PURSUANT TO § 1112(b) ........... 10

    A.  The "Totality of Circumstances" Confirms Debtor's Bad Faith Filing ........... 11

        1.  This is a Single Asset Case ........................................................................... 13

        2.  There is No Operating Business to Reorganize .......................................... 13

        3.  This is a Two Party Dispute ........................................................................... 14

        4.  Debtor's Case Was Filed to Gain a Tactical Advantage ............................ 18

    B.  Debtor's Inability to Effectuate a Plan Constitutes Additional "Cause" for Dismissal Under § 1112(b) ................................................................................... 19

II.  ALTERNATIVELY, THIS COURT SHOULD DISMISS THIS CASE PURSUANT TO § 305(a) ......................................................................................................................... 20

III.  DISMISSAL SHOULD BE WITH PREJUDICE PURSUANT TO §§ 105(a) AND 349(a) ............................................................................................................................... 22

CONCLUSION ................................................................................................................... 23

# TABLE OF AUTHORITIES

**Decisions**                                                                                          **Page(s)**

*Chitex Commc'n, Inc. v. Kramer*,
    168 B.R. 587 (S.D. Tex. 1994) ......................................................................................11, 14

*CIT Grp./Equip. Fin., Inc. v. Riddle*,
    31 A.D.3d 477 (2d Dep't 2006) ............................................................................................18

*Credit Suisse First Boston Mortg. Capital LLC v. Cohn*,
    No. 03 Civ. 6146, 2004 WL 1871525 (S.D.N.Y. Aug. 19, 2004) ..........................................18

*In re Antelope Techs., Inc.*
    431 F. App'x 272 (5th Cir. 2011) ....................................................................................11, 18

*In re Argus Grp. 1700, L.P.*,
    206 B.R. 737 (Bankr. E.D. Pa. 1996) .......................................................................20, 21, 22

*In re Beacon Reef Ltd. P'ship*,
    43 B.R. 644 (Bankr. S.D. Fla. 1984).........................................................................20, 21-22

*In re Brazos Emergency Physicians Ass'n, P.A.*,
    471 F. App'x 393 (5th Cir. 2012) .......................................................................11, 16, 18-19

*In re Briggs-Cockerham, LLC*,
    No. 10-34222-BJH-1, 2010 WL 4866874 (Bankr. N.D. Tex. Nov. 23, 2010) ............10, 12, 17

*In re Casse*,
    198 F.3d 327 (2d Cir. 1999)...................................................................................................23

*In re Colonial Ford, Inc.*,
    24 B.R. 1014 (Bankr. D. Utah 1982) ...............................................................................20, 22

*In re Garcia*,
    479 B.R. 488 (Bankr. N.D. Ind. 2012).................................................................................23

*In re Humble Place Joint Venture*,
    936 F.2d 814 (5th Cir. 1991) .......................................................................11, 14-15, 17, 19

*In re Jer/Jameson Mezz Borrower II, LLC*,
    461 B.R. 293 (Bankr. D. Del. 2001) ............................................................................ *passim*

*In re Liptak*,
    304 B.R. 820 (Bankr. N.D. Ill. 2004) .............................................................................15, 17

*In re Little Creek Dev. Co.*,
    779 F.2d 1068 (5th Cir. 1986) ........................................................................................11, 12

**Page(s)**

*In re Marino*,
No. 09-33545-H3-11, 2010 WL 519772  (Bankr. S.D. Tex. Feb. 9, 2010)............................11

*In re Mirant Corp.*,
No. 03-46590, 2005 WL 2148362 (Bankr. N.D. Tex. Jan. 26, 2005) ....................................11

*In re Starmark Clinics, LP*,
388 B.R. 729 (Bankr. S.D. Tex. 2008) ..........................................................................12, 14

*In re White Nile Software, Inc.*,
No. 08-33325-SGJ-11, 2008 WL 5213393
(Bankr. N.D. Tex. Sept. 16, 2008) ................................................................................. *passim*

*Investors Grp., LLC v. Pottorff*,
518 B.R. 380 (N.D. Tex. 2014)...............................................................................11, 17, 19

*News Ltd. v. Australis Holdings Pty, Ltd.*,
293 A.D.2d 276 (1st Dep't 2002) ..........................................................................................18

**Statutes**

11 U.S.C. § 105(a) ......................................................................................................3, 22, 23

11 U.S.C. § 305(a) ............................................................................................................ *passim*

11 U.S.C. § 305(a)(1) ....................................................................................................... *passim*

11 U.S.C. § 349(a) ......................................................................................................3, 22, 23

11 U.S.C. § 1112(b) .......................................................................................................... *passim*

11 U.S.C. § 1112(b)(1) ...................................................................................................10

11 U.S.C. § 1112(b)(4) ...................................................................................11, 19, 20

11 U.S.C. § 1112(b)(4)(A) ...........................................................................................11, 19

11 U.S.C. § 1112(b)(4)(B) ...............................................................................................19

28 U.S.C. § 157(b) ................................................................................................................3

28 U.S.C. § 157(b)(2) ..........................................................................................................3

28 U.S.C. § 1334 ..................................................................................................................3

28 U.S.C. § 1408 ..................................................................................................................3

**Page(s)**

28 U.S.C. § 1412 ..................................................................................................................3

**Rules**

N.Y. C.P.L.R. § 3213 ........................................................................................................18

COMES NOW, Eucla Investments Limited ("Eucla"), a secured creditor and party-in-interest, which files this Memorandum of Law (the "Memorandum") in Support of its Motion for Entry of an Order Dismissing the Debtor's Chapter 11 Case with Prejudice Pursuant to §§ 1112(b) and/or 305(a) of the Bankruptcy Code (the "Motion"), and avers as follows:

## PRELIMINARY STATEMENT

1.      This case concerns an $18,750,000 loan that Eucla made to Debtor in April of 2014 (the "Eucla Loan"), which was accompanied by an unconditional pledge giving Eucla an absolute, first-priority lien and security interest in the Debtor's equity interest in American Ethane Company, LLC ("American Ethane"), a Texas limited liability company.  The Eucla Loan matured on September 1, 2016, without any payment whatsoever by the Debtor.  On September 29, 2016, shortly after receiving a formal demand notice from Eucla declaring the Debtor's breach, demanding payment, and placing the Debtor on notice that Eucla would be pursuing its legal remedies, the Debtor filed its Chapter 11 petition (the "Petition").  The Debtor's Petition was unaccompanied by any substantive pleadings, and its subsequent disclosures regarding its assets and liabilities raise significant questions regarding the real interests being advanced by the Debtor's filing, the nature of its only other (unsecured) debts, and the source of the funds used to initiate these proceedings in the first instance.

2.      This case is a straightforward two party dispute between a secured lender and a borrower.  As the Debtor's sworn schedules reflect, Eucla is the Debtor's *only* secured creditor, and its $21,502,696.11 debt as of September 1, 2016, plus accrued and continuing interest is wholly undisputed by the Debtor.  Moreover, the Debtor's *only* asset is its 47.5% membership interest in American Ethane, which was pledged in its entirety to Eucla.  According to the Debtor's voluntary petition and schedules, its only other creditors are a law firm – Davillier Law Group, LLC ("Davillier") – listed as being owed $60,000 in "legal fees" and an unsecured

1

creditor – Bluebell Investments Trading, Inc. ("Bluebell") – for which the Debtor has identified a $5,000,000 unsecured claim.  Debtor cannot and does not contest that the Eucla Loan and Eucla's associated pledge interest have priority over these claims.  Nor does the Debtor contest that it has no non-pledged assets with which to pay such claims.

3.      Moreover, even these limited, unsecured claims are not what they first appear. Based on multiple public statements by the Debtor's own principals and a state court petition filed by Debtor's "major equity shareholder" Konstantin Nikolaev, who was specifically identified by the Debtor in its mailing matrix for notice in this case, the Debtor's $5,000,000 unsecured debt is really owed to the Debtor's own insider and affiliate.  The Debtor's filings are conspicuously silent about this relationship, failing to disclose the connection between that purported debt and Nikolaev.  Debtor also fails to explain the source of the $50,000 retainer that was used to retain bankruptcy counsel and prepare the Debtor's filing.  According to the Debtor's filings, these funds were transferred from a "trust account" by the same law firm (Davillier) that is scheduled as Debtor's only other unsecured creditor.  Moreover, the Debtor's attorney compensation disclosure form certifies that the source of these funds was not the Debtor.[1]

4.      Under the circumstances, it is apparent that the Debtor is using the automatic stay merely to avoid performing its contractual obligations and to frustrate Eucla's timely exercise of its available remedies as a secured lender.  The Debtor is not an operating company and has no cash or financial assets.[2] It also has no accounts receivable, no real property or fixed assets, and no prospects of any reorganization whatsoever.  Indeed, by its own admission in its Schedules

---

[1]      Davillier also is counsel of record for American Ethane, Debtor's equity interest in which is the sole disclosed asset of the Debtor's estate.

[2]      In fact, the final pre-bankruptcy balance, before closing, of Debtor's last disclosed financial account was only $9.73.  *See* Ex. J at 4 (ECF No. 14).

and other statements filed with this Court, the Debtor has *no* ongoing business operations or employees.  Rather, it is merely a holding company that borrowed funds from Eucla to purchase a minority interest in American Ethane.  There is no operating business to reorganize, no assets to distribute, and no possibility of any recovery by any arm's-length creditors after satisfaction of the Debtor's secured obligations to Eucla.  Thus, the Debtor's Petition is contrary to the purposes of the Bankruptcy Code's reorganization provisions, and bears all the indicia of a bad faith filing.

5.      For the reasons set forth below, dismissal with prejudice is therefore required pursuant to 11 U.S.C. §§ 1112(b), 305(a), 105(a) and 349(a).

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334 and 157(b).  This Motion is a core matter pursuant to 28 U.S.C. § 157(b)(2).

7.      By separate motion, Eucla is seeking transfer of this proceeding to the Bankruptcy Court for the Southern District of Texas.  More specifically, because the Debtor's sole domicile and residence, primary asset, and principal place of business are all located in the Southern District of Texas, transfer to that District is both appropriate and required under 28 U.S.C. §§ 1408 and/or 1412.  Pending a ruling on that motion, Eucla brings the instant Motion before this Court to fully preserve its rights in this proceeding and its pledged collateral.

## FACTUAL BACKGROUND

A.      **The Loan and Guaranty Agreement**

8.      On April 30, 2014, the Debtor, as borrower, and Eucla, as lender, entered into a Loan and Guaranty Agreement (the "Loan and Guaranty Agreement"), pursuant to which Eucla

made an $18,750,000 loan to the Debtor.  *See* Ex. A.[3]  Under the terms of the Loan and Guaranty Agreement, the full principal amount and all accrued, capitalized interest was required to be repaid in full by March 15, 2015.  *See id.* at 1.  The Eucla Loan was further evidenced by a Promissory Note, also dated April 30, 2014, which specified that the Debtor was required to pay all principal and interest on the Maturity Date specified in the Loan and Guaranty Agreement. *See* Ex. B.  Under the Promissory Note and the Loan and Guaranty Agreement, the Debtor's repayment obligations to Eucla are clear and unequivocal, and the Debtor was precluded from incurring any other indebtedness.  For example, the Loan and Guaranty Agreement specifies that the Debtor cannot "create, incur, assume or permit to exist any indebtedness or liabilities resulting from any borrowings, loans or advances, whether secured or unsecured, matured or unmatured, liquidated or unliquidated, joint or several, except the liabilities . . . under this [a]greement."  Ex. A § 5.2.  That agreement likewise specifies that Debtor's pledged equity interest in American Ethane was (and would continue to be) the only secured interest in the Debtor's assets.  *See* Ex. A § 5.4.  The Debtor's Promissory Note further specified that the Debtor's repayment obligations are "absolute and unconditional."  Ex. B at 1.

9.     In addition to being governed by New York law, the Loan and Guaranty Agreement provides that the Debtor "irrevocably" agreed that disputes relating to the Eucla Loan could be submitted to the jurisdiction of courts "sitting in the State and County of New York." *See* Ex. A § 7.9.  The Debtor further agreed to "waive[] any objection that it may now or hereafter have to the venue of any such proceeding being in such a [New York] court and any claim that any such proceeding brought in such a court has been brought in an inconvenient forum."  *Id.*  Subsequent amendments to the Loan and Guaranty Agreement reiterated this

---

[3]     All references to "Ex. __" herein refer to Exhibits filed with this Motion.

consent to New York jurisdiction and waiver of any and all objections to New York venue in the event of collection efforts by Eucla.  *See* Ex. C § X: Ex. D § 4(f).

### B.       The Pledge Agreement

10.       As was contemplated by the parties to the Loan and Guaranty Agreement, the proceeds of the Eucla Loan were used by the Debtor to purchase 23,750,000 units of American Ethane, representing a 47.5% equity interest in that company.[4]  On June 10, 2014, the Debtor, as pledgor, and Eucla, as pledgee, also entered into a Pledge Agreement (the "Pledge Agreement"), pursuant to which the Debtor granted Eucla an absolute and unconditional first-priority interest in the entirety of Debtor's pledged equity interests, the certificates representing those interests and all voting (and other) rights therein, all proceeds and other collateral received by the Debtor, and all books, records, and other materials relating to any of Eucla's collateral (the "Collateral"). *See* Ex. E.  On June 11, 2014, Eucla filed a UCC 1 Financing Statement ("UCC Statement") with the Texas Secretary of State perfecting its interest in the Collateral, including its pledged equity interest in American Ethane.  *See* Ex. F.

11.       Consistent with the Debtor's obligations and covenants under the Loan and Guaranty Agreement, the rights granted to Eucla under the Pledge Agreement are expansive. Under the Pledge Agreement, the Debtor agreed that it would abide by all of the covenants set forth in the Loan and Guaranty Agreement, including the prohibition against incurring any further debt of any sort, and that it would not take any action altering the Debtor's existing equity interests or Eucla's rights with respect to the pledged equity interest or any other Collateral.  *See* Ex. E §§ 4.1, 4.6.  The Debtor further agreed that, in the event of any default by the Debtor, all voting, dividend-related, and other rights with respect to the pledged Collateral shall *immediately*

---

[4]       Debtor's schedules reference a 50% equity interest in American Ethane, which is incorrect.  *Compare* Ex. E at Schedule I, *with* Ex. I at 2 (ECF No. 13).

become vested in Eucla.  The Pledge Agreement also authorizes Eucla, in its discretion, to exercise all rights and remedies of a secured party under the UCC to dispose of and collect upon the pledged Collateral.[5]  These protections reflected the reality that any nonpayment by the Debtor put Eucla at significant risk, given that the Debtor's only asset was the pledged equity interest, and were designed to prevent the Debtor and its principals from taking actions that could delay collection and diminish the value of Eucla's Collateral.

### C.    Debtor's Initial Nonpayment and Extension of the Maturity Date

12.    The Debtor failed to repay the Eucla Loan on the stated maturity date of March 15, 2015.  In an effort to reach an accommodation, Eucla agreed to extend the maturity date to September 15, 2015.  The parties executed a Default Waiver and First Amendment to the Loan and Guaranty Agreement on July 14, 2015 (the "First Amendment").  *See* Ex. C.  In the First Amendment, the Debtor specifically confirmed and agreed that "the Pledge Agreement ranks as a continuing security for the payment and discharge of the Secured Obligations (as defined in the Pledge Agreement) and shall continue in full force and effect in all respects, notwithstanding the extension of the Maturity Date."  *Id.* § VII.

13.    Notwithstanding this initial extension, the Debtor did not make any payment of principal or interest to Eucla by the extended maturity date.  Eucla thereafter agreed to extend the maturity date to September 1, 2016, as reflected in a Second Amendment to Loan and Guaranty Agreement, dated September 1, 2015 (the "Second Amendment").  *See* Ex. D.  As was the case with the First Amendment, the Second Amendment reaffirmed the Debtor's original obligations under the Loan and Guaranty Agreement, noting that all existing obligations remained

---

[5]       As with the Loan and Guaranty Agreement, the Debtor further agreed to New York choice of law and forum selection clauses, agreeing that it would submit to the non-exclusive jurisdiction of the New York courts and waiving any objection to venue in the state and federal courts sitting in the state and county of New York. *See* Ex. E § 8.10.

unchanged and were fully ratified and confirmed in all respects except as expressly amended in writing.  *See id.* §§ 4(a)-(b).

### D.    The Debtor Fails to Satisfy its Loan-Related Obligations

14.    By letter dated August 31, 2016, Eucla formally notified the Debtor that full payment in the amount of $21,502,696.11 (comprising the principal balance of $18,750,000 plus accrued, capitalized interest in the amount of $2,752,696.11) was required by the September 1, 2016 maturity date.  *See* Ex. G.  However, the Debtor failed to make any payment whatsoever to Eucla.

15.    By Notice dated September 16, 2016, Eucla provided the Debtor with formal notice that is was in material breach of its payment obligations, as well as in default of various other obligations under the Loan Documents.  *See* Ex. H.  Eucla further notified the Debtor that its failure to pay all outstanding amounts owed within five business days would constitute an additional Event of Default covered by Section 6.1 of the Loan and Guaranty Agreement.  Eucla also notified the Debtor that if it did not comply with its repayment obligations, Eucla would "exercise all rights, powers, and remedies afforded to it under the Loan Documents."  *Id.*

16.    However, no payment was forthcoming.  On the morning of September 26, 2016, the last business day before additional default-related remedies would automatically be triggered under Section 6.1 of the Loan and Guaranty Agreement, John Houghtaling – the Debtor's self-described "15% percent stakeholder" through his strategic investment company Houghtaling Enterprises, LLC – threatened that he would "throw" the Debtor into bankruptcy unless Eucla agreed to a further extension of the maturity date that cured the Debtor's existing defaults.[6]

---

[6]     *See* Ex. Q (*available at* http://www.amshaleglobal.com, last accessed Oct. 30, 2016); *see also* Ex. R.

Immediately following Eucla's refusal to agree to Mr. Houghtaling's terms, the Debtor filed the instant case, thwarting any further efforts by Eucla to seek collection from the Debtor.

###### E.    The Bankruptcy Case

17.    The Debtor's Petition was unaccompanied by any of the usual and customary substantive pleadings, and represented that "[f]unds will be available for distribution to unsecured creditors." Ex. K at 3 (ECF No. 1). Two weeks later, on October 11, 2016, the Debtor filed its schedules and statement of financial affairs (collectively, the "Schedules"). *See* Ex. I (ECF No. 13); Ex. J (ECF No. 14). In its Schedule D filing, the Debtor admits that Eucla is the Debtor's sole secured creditor, and concedes the validity of Eucla's claim. *See* Ex. I at 5 (scheduling Eucla's secured claim without designating claim as contingent, unliquidated, or disputed). As of the September 1, 2016 maturity date, the Debtor owed Eucla $21,502,696 in overdue principal and interest. The Debtor's Schedules correspondingly list the undisputed amount owed to Eucla as approximately "$21,000,000." *See id.*

18.    Contrary to the Debtor's prior statement that "funds will be available for distribution to unsecured creditors," the Schedules disclose that the Debtor has no cash, deposits, investments, accounts receivable, or any other source of income or revenues, including business or non-business revenue from which a distribution to secured or unsecured creditors could be made. *See* Ex. I at 2-4; Ex. J at 4-7 (ECF Nos. 13, 14). The Debtor discloses a single (closed) bank account at First NBC Bank with a final closing balance of $9.73. *See* Ex. J at 4. The Debtor further confirms that it has no employees, no real property, and no inventory. Notably, its Schedules also omit *any* answer to Form 207's specific request for a complete list of the Debtor's "officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case." Ex. J at 6.

19.     The Debtor thus has *no* assets aside from its equity interest in American Ethane, which was acquired in the first instance with the Eucla Loan proceeds and is already pledged as Collateral for the Eucla Loan.  The Debtor's Schedules arbitrarily assign a $25,000,000 value to this interest, but elsewhere in its Schedules the Debtor represents that no financial statements for the Debtor's holdings have been issued within two years of its Petition, that no inventories of Debtor's property were taken during that same time period, and that it received no revenue associated with its minority interest.  *See* Ex. I at 2 (ECF No. 13); Ex. J at 6 (ECF No. 14). Setting aside this questionable valuation, the Debtor lists no other assets and no source of income or cash flow that could be used to satisfy creditor claims.

20.     Finally, Debtor's filings reveal that the Debtor has only two other creditors. Debtor's Schedules and Form 204 identify Davillier as holding an unsecured claim of $60,000 for "Legal Fees."  Ex. S at 1 (ECF No. 2); Ex. I at 6.  The Schedules also identify Bluebell as holding an unsecured claim of $5,000,000.  *See* Ex. S at 1; Ex. I at 6.  But unlike every other claim referenced in Debtor's Schedules, Debtor omits any response to Form 206E/F's and Form 204's requests for the specific basis for the Bluebell claim.  *See id.*   Further, as discussed more fully below, court papers and other public statements by Debtor and/or its principals indicate that Bluebell is *not* an unaffiliated creditor, but rather an entity directly owned and/or controlled by one of the Debtor's "major equity shareholder[s]."  *See infra* ¶¶ 34-35.

21.     With respect to the Davillier claim, the Disclosure of Compensation filed by the Debtor's bankruptcy counsel indicates that the $50,000 payment used to retain counsel and pay for the Petition came from the "Trust Account of Davillier Law Group."  Ex. L (ECF No. 11). Debtor's own Schedules also indicate that these funds did not come from the Debtor itself.  *See* Ex. I. at 6.  There is thus a question regarding the ultimate source of the funds used to pay for

Debtor's bankruptcy filing, the Debtor's underlying access to the funds that would be necessary to reorganize, and the nature of the particular trust account maintained by Davillier – which also is counsel of record to American Ethane.

22.      To this date, more than a month after the Debtor's Petition, the Debtor still has not filed any motions in this case besides an initial application to retain counsel.  The Debtor also has not sought to schedule a hearing (other than with respect to bankruptcy counsel's retention) or commence administration of the Debtor's bankruptcy estate.

## ARGUMENT

23.      Taken as a whole, the basic economics of this case and the nature of the Debtor's disclosures underscore that this case does not belong in bankruptcy court, and that the Debtor's Petition was little more than a bad-faith effort to frustrate Eucla's collection efforts.   By this Motion, Eucla therefore respectfully requests entry of an order dismissing the Debtor's Chapter 11 case for cause and/or in the interests of the Debtor and its creditors.

## I.      THIS CASE MUST BE DISMISSED FOR "CAUSE" PURSUANT TO § 1112(b)

24.      Section 1112(b) of the Bankruptcy Code, provides, in pertinent part:

[*O*]*n request of a party in interest, and after notice and a hearing,* absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, *the court shall* convert a case under this chapter to a case under chapter 7 or *dismiss a case under this chapter,* whichever is in the best interest of creditors and the estate, *if the movant establishes cause.*

11 U.S.C. § 1112(b)(1) (emphasis added).  Once cause for dismissal is established by the movant, the burden shifts to the opposing party to show the existence of unusual circumstances indicating that the bankruptcy case should not be dismissed.  *See In re Briggs-Cockerham, LLC*, No. 10-34222-BJH-1, 2010 WL 4866874, at *3 (Bankr. N.D. Tex. Nov. 23, 2010).

25.    Section 1112(b)(4) provides a nonexclusive list of considerations constituting "cause" for dismissal.  One such consideration is "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."  11 U.S.C. § 1112(b)(4)(A).  In addition, the Fifth Circuit has consistently recognized that filing a petition in bad faith also constitutes "cause" for dismissal.  *See In re Brazos Emergency Physicians Ass'n, P.A.*, 471 F. App'x 393, 394 (5th Cir. 2012) (affirming dismissal where only purpose of bad faith filing was to gain control of state court claims that creditors were prosecuting derivatively on debtor's behalf); *In re Antelope Techs., Inc.* 431 F. App'x 272, 275 (5th Cir. 2011) (affirming dismissal of bad faith petition filed to gain an unfair advantage in shareholder derivative action, holding that "[a] bankruptcy court may dismiss a Chapter 11 petition if the court determines that it was not filed in good faith"); *In re Humble Place Joint Venture,* 936 F.2d 814, 816-17 (5th Cir. 1991) (affirming § 1112(b) dismissal of chapter 11 petition filed in bad faith to delay creditors); *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1071-72 (5th Cir. 1986) (noting that "[e]very bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings"); *Chitex Commc'n, Inc. v. Kramer*, 168 B.R. 587, 590 (S.D. Tex. 1994) (affirming dismissal of petition filed to controvert divorce decree, holding that "[g]ood faith is required in a Chapter 11 filing").

### A.    The "Totality of Circumstances" Confirms Debtor's Bad Faith Filing

26.    In determining whether a chapter 11 petition was filed in bad faith, courts apply a "totality of the circumstances" test.  *See Investors Grp., LLC v. Pottorff*, 518 B.R. 380, 382 (N.D. Tex. 2014); *In re Marino*, No. 09-33545-H3-11, 2010 WL 519772, at *3 (Bankr. S.D. Tex. Feb. 9, 2010); *In re Mirant Corp.*, No. 03-46590, 2005 WL 2148362, at *6-8 (Bankr. N.D. Tex. Jan. 26, 2005).  The non-exclusive factors typically considered under

this standard include: (i) whether the debtor has only a single asset; (ii) whether the debtor's assets are fully encumbered; (iii) whether the debtor has any employees, cash flow, and sources of income to fund a plan; (iv) whether the debtor has any unsecured creditors and the relative size of their claims; and (v) whether there has been an action to foreclose on the debtor's asset(s). *See In re Little Creek Dev. Co.*, 779 F.2d at 1072-73 (holding that good faith determination necessitates an "on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities"); *In re Briggs-Cockerham, LLC*, 2010 WL 4866874, at *4-6 (dismissing Chapter 11 case where there was a substantial or continuing diminution of the estate, an absence of a reasonable likelihood of rehabilitation, and the bankruptcy filing was primarily a litigation tactic).

27.     Courts likewise have emphasized that there is no legitimate restructuring purpose where bankruptcy protection is principally sought to address a two party dispute. *See In re Marino*, 2010 WL 519772, at *3 ("This court has generally found cause to dismiss cases in which it appeared that the debtor was attempting to use the provisions of the Bankruptcy Code to gain an unfair advantage in a two party dispute."); *In re Starmark Clinics, LP*, 388 B.R. 729, 736 (Bankr. S.D. Tex. 2008) (holding that petition seeking to "use the provisions of the Bankruptcy Code to gain an unfair advantage in a two party [state court litigation] dispute strongly supports a finding of cause for dismissal").

28.     Here, the Debtor has no reasonable prospect of effective rehabilitation and is before this Court for no reason other than to secure a tactical advantage in its ongoing dispute with its only secured creditor.  The Debtor has no operating business to reorganize, no assets to distribute to arm's-length unsecured creditors, and no purpose to its Petition aside from erecting an impediment to Eucla's enforcement and collateral preservation efforts.  Moreover, because

the Debtor has *no* other assets aside from the American Ethane equity interest that was already pledged to Eucla, Debtor's Petition coupled with any fees incurred by Debtor's counsel will only serve to impose unwarranted administrative expense and diminish the value of the Debtor's sole asset.

### 1.    This is a Single Asset Case

29.    *First*, the Debtor cannot contest that this case involves a single asset that has already been pledged to its only secured creditor, Eucla.   According to the Schedules, the Debtor's only asset is its equity interest in American Ethane.  *See* Ex. I at 5 (ECF No. 13).  This same asset reflects Eucla's Collateral under the Pledge Agreement, and secures the Debtor's obligations under the Loan and Guaranty Agreement, the Promissory Note, and related loan documents.  Furthermore, although the Debtor arbitrarily assigns a value of $25,000,000 to its units in American Ethane, which reflect a 47.5% interest in that company and not the 50% interest indicated in Debtor's Schedules, the value of those pledged units is not even remotely sufficient to cover the amounts owed to Eucla.

### 2.    There is No Operating Business to Reorganize

30.    *Second*, the Debtor has no business to reorganize.  This is evidenced by the Debtor's Schedules, as well as the fact that more than a month has passed without a single substantive motion being filed with this Court other than an application to retain counsel.  Debtor has no employees, no ongoing operations, and, upon information and belief, no past or present sources of revenue.  *See* Ex. I at 2-3 (ECF No. 13); Ex. J at 1-4 (ECF No. 14).  Even standing alone, such facts point to a bad faith filing by the Debtor.  *See Chitex Commc'n*, 168 B.R. at 590-91 (affirming dismissal of bad faith petition, noting that "the record is devoid of any evidence by [debtor] of a need to reorganize").  The Schedules list only one (closed) checking account with First NBC Bank, which had a closing balance of $9.73.  Moreover, the Schedules disclose no

sources of income, no receivables, no inventory, and no assets or real property. *See* Ex. I at 2-3 (ECF No. 13); Ex. J at 1, 4 (ECF No. 14).   On their face, these filings confirm that the Debtor has no active business and is little more than a single-asset holding company.

31.   Indeed, based on the Schedules and the Debtor's own sworn submissions, the Debtor even lacks the ability to pay for its own legal and trustee fees, and did not even have sufficient independent sources of income to pay for its Petition.   Use of the bankruptcy courts is not proper under these circumstances, especially where there are no employees to protect and no going concern to preserve for the benefit of creditors.   *See In re White Nile Software, Inc*., No. 08-33325-SGJ-11, 2008 WL 5213393, at *3 (Bankr. N.D. Tex. Sept. 16, 2008) (dismissing Chapter 11 filing where debtor borrowed money to pay for its bankruptcy counsel, stating that "Chapter 11 is expensive and complex business, and the Court sees no one who would genuinely benefit from it here, since, again, all but two relatively insignificant creditors are parties or shareholders of parties in the state court litigation or otherwise likely insiders.").

### 3.   This is a Two Party Dispute

32.   *Third*, this case is effectively a two party dispute.   As indicated previously, Debtor's sole asset of any value is pledged to Eucla as collateral for the Eucla Loan, and Debtor's principal liability to Eucla already has been conceded in Debtor's Schedules.   *See* Ex. I at 5 (ECF No. 13).   The Debtor identifies only two other claims, both of which are unsecured:  a $60,000 claim for unidentified "legal fees" by Davillier and a $5,000,000 claim by Bluebell for which Debtor's filings offer no explanation whatsoever.   *See id.* at 6-7; Ex. S at 1 (ECF No. 2).

33.   On their face, these smaller unsecured claims cannot transform the Debtor's loan-related dispute with Eucla into a matter for which bankruptcy protection would be appropriate. *See In re Starmark Clinic, LP*, 388 B.R. at 736 (petition dismissed despite scheduling of three non-insider creditors, given that assets of the estate were insufficient to provide recovery); *In re*

*Humble Place Joint Venture*, 936 F.2d at 816-18 (dismissing case with two non-insider unsecured creditors as bad faith filing, where debtor's sole real estate asset had no income or employees and continuing bankruptcy would impose further costs borne by secured creditor); *In re Liptak*, 304 B.R. 820, 842 (Bankr. N.D. Ill. 2004) (dismissing petition despite presence of few unsecured creditors, where continuing the case would only provide a benefit to the debtor).  With no other unencumbered assets to satisfy creditors other than those already pledged to Eucla, the Debtor's Petition offers no prospect of reorganization and no prospect of payment for the Debtor's unsecured creditors.

34.    Moreover, the Debtor's own Schedules, documents, and evidence from the public record make clear that even these purported unsecured claims do *not* belong to arm's-length creditors unconnected to the Debtor and its principals.  Indeed, in a recent Louisiana court filing by Konstantin Nikolaev, one of the Debtor's principal owners listed on the Debtor's verified mailing matrix, Nikolaev indicates that it was *he* who loaned the Debtor the $5 million ascribed to Bluebell in Debtor's Schedules.  *See* Ex. M at ¶ 40 (stating that Nikolaev "had loaned over $5 million dollars to [Debtor] to invest into the [American Ethane] Project . . ."); Ex. N at 2 (ECF No. 3).  Nikolaev's court papers further confirm that Debtor is "owned in part" by Nikolaev, and that he indirectly owns an interest in American Ethane through Debtor.[7]  *See id.* ¶¶ 2, 23.  In those court papers, Nikolaev also claims that he serves as a board member for the Debtor.  *See id.* ¶ 46.

35.    The documentary record similarly confirms this connection.  For example, the First Amendment to the Texas Limited Liability Company Operating Agreement of Amshale

---

[7]    Nikolaev's pleadings refer to the Debtor as "Holdco," but in context they clearly reference the Debtor.  For example, Nikolaev alleges that "[i]n order to make its initial capital contribution to the Company, Holdco borrowed funds ($18.5 Million) from Eucla."  Ex. M ¶ 24.

Energy, LLC, dated April 28, 2014, identified Nikolaev as a "member" and "manager" holding a 28.33% ownership in Debtor.  *See* Ex. R.  Similarly, Debtor's current public website represents that Nikolaev is a "major equity shareholder" and an "active member" of the Debtor, prominently featuring Nikolaev and touting his extensive business holdings and inclusion in the Forbes list of global billionaires.  *See* Ex. O (*available at* http://www.amshaleglobal.com/?page_id=5, last accessed Oct. 30, 2016); Ex. P (*available at* http://www.amshaleglobal.com/?page_id=12, last accessed Oct. 30, 2016).  Under these circumstances, it is little wonder that the Debtor offers no explanation for the $5 million debt it purportedly owes to Bluebell.  Nor is it surprising that the Debtor's Schedules fail to respond to Question 28 required by Form 207, which required that the Debtor disclose a complete list of "the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case." Ex. J at 6 (ECF No. 14).  Regardless, Debtor cannot justify a bad faith filing by passing off insider claims as third party debts.  *See In re Brazos Emergency Physicians Ass'n, P.A.*, 471 F. App'x at 394 (affirming dismissal of petition filed to gain advantage in shareholder derivative litigation, where creditors were principally insiders and affiliates); *Investors Grp.*, 518 B.R. at 384-85 (affirming dismissal where creditors were mainly insiders).

36.     The Debtor's Schedules also raise questions regarding the nature and substance of the scheduled Davillier claim for legal fees.  As courts have held, debtors cannot avoid dismissal merely by relying on unsecured debts owed to counsel.  *See In re Jer/Jameson Mezz Borrower II, LLC*, 461 B.R. 293, 299 (Bankr. D. Del. 2001) (dismissing petition where only unsecured creditors were "attorneys and financial advisors but it appear[ed] that even they are not unsecured creditors because they were either paid by, or obtained retainers from, [lender to

debtor's affiliate] before the filing").  The Davillier firm's trust payment to bankruptcy counsel raises the question of *which* non-Debtor entity or individual ultimately funded Debtor's filing. Whatever the eventual explanation may be, this unsecured claim cannot be invoked by the Debtor to claim any legitimate purpose for its Petition.  *See In re Liptak*, 304 B.R. at 827-30 (finding that debtor's inaccurate and misleading schedules established bad faith warranting dismissal).

37.     Here, it is self-evident that the Debtor's filing was designed to frustrate Eucla's creditor remedies and benefit the Debtor's principals, not to secure any payment for the Debtor's unsecured creditors.  *See Investors Grp.*, 518 B.R. at 384-85 (affirming bankruptcy court's dismissal of chapter 11 case filed to gain a litigation advantage where debtor's creditors were mainly insiders).  Indeed, under similar circumstances, courts have held that unsecured claims by professionals hired before the bankruptcy filing – as well as other unsecured creditors – cannot support a chapter 11 petition where such unsecured creditors were "exerting no pressure on [the debtor] before the filing," would not benefit from the bankruptcy, and where the costs of bankruptcy would be unfairly borne by the principal creditor.  *See In re Jer/Jameson Mezz Borrower II, LLC*, 461 B.R. at 299, 306-07 (holding that Bankruptcy Code "does not elevate administrative claims above secured claims"); *In re Briggs-Cockerham*, 2010 WL 4866874, at *5 (dismissing case where value of lease to debtor's estate did not justify the value lost by accrual of ongoing bankruptcy-related expenses); *see also In re Humble Place Joint Venture*, 936 F.2d at 818 (affirming dismissal, noting that "preservation of investors' equity must be evaluated in the harsh light of the ongoing costs of bankruptcy administration and taxes, which deplete such equity at a steady pace").

### 4.    Debtor's Case Was Filed to Gain a Tactical Advantage

38.    *Finally*, all of the available evidence underscores that the Debtor's filing was designed to secure a tactical advantage.  The basic economic reality reflected in the Debtor's Schedules, the Debtor's conspicuous omissions regarding the role of insiders and the source(s) of its legal fees, and the 11th-hour rush to "throw" Amshale Energy, LLC into bankruptcy when Eucla was unwilling to extend the maturity date and waive the Debtor's defaults, all reflect the true nature of this case – the sole purpose of which is to thwart Eucla's exercise of its contractual rights and remedies.[8]  Immediately prior to Debtor's filing, Eucla gave notice clearly signaling that it would be "exercis[ing] all rights, powers, and remedies afforded to it under the Loan Documents" in the event that Debtor did not make immediate payment, and that an additional default under Section 6.1 of the Loan and Guaranty Agreement would automatically be triggered on September 26, 2016 (five business days after the notice was sent by Eucla) in the absence of any such payment.  *See* Ex. H.  The decision by John Houghtaling, Debtor's self-described "15% percent stakeholder" through his investment company, to throw the company into bankruptcy to avoid that reckoning thus reflects an impermissible effort to secure a tactical litigation advantage.[9]  *See In re Antelope Techs., Inc.*, 431 F. App'x at 274-75 (affirming dismissal of Chapter 11 petition filed to gain unfair advantage in a shareholder derivative action); *In re*

---

[8]    On October 13, 2016, Eucla separately filed suit in New York to enforce its rights against the guarantors of the Eucla Loan.  *See Eucla Invs. Ltd. v. Houghtaling Enters., LLC*, Index No. 655429/2016 (N.Y. Sup. Ct.).  Under New York law, guarantors' absolute and unconditional guarantees may be enforced independent of any claims again the Debtor, and without negating or diminishing its rights as a secured creditor of the Debtor.  *See Credit Suisse First Boston Mortg. Capital LLC v. Cohn*, No. 03 Civ. 6146, 2004 WL 1871525, at *6-7 (S.D.N.Y. Aug. 19, 2004) (granting summary judgment against guarantors in the amount of outstanding loan and other costs, despite borrower's bankruptcy filing); *CIT Grp./Equip. Fin., Inc. v. Riddle*, 31 A.D.3d 477, 478 (2d Dep't 2006) ("A guarantor's liability for a corporate debt is not affected by the corporation's bankruptcy filing."); *News Ltd. v. Australis Holdings Pty, Ltd.*, 293 A.D.2d 276, 277 (1st Dep't 2002) (holding that principal obligor is not a necessary party to action to enforce guaranty of payment).  Consistent with Section 3213 of New York's Civil Practice Law and Rules, Eucla has filed a summary judgment motion in its guaranty enforcement action, which was noticed for hearing on November 23, 2016.

[9]    *See* Ex. Q (*available at* http://www.amshaleglobal.com, last accessed Oct. 30, 2016); *see also* Ex. R.

*Brazos Emergency Physicians Ass'n, P.A.*, 471 F. App'x at 394 (affirming dismissal of bankruptcy case filed to gain tactical litigation advantage and control over derivative state claims); *Investors Grp.*, 518 B.R. at 383-84 (affirming dismissal of bankruptcy petition filed to avoid litigation).

39.     In sum, taken as a whole, the facts and factors discussed above – single asset, two party dispute, no operating business to reorganize, filing immediately prior to secured creditor's exercise of legal remedies, and threadbare (and outright misleading) Schedules – *all* point to a bad faith filing.  *See In re Jer/Jameson Mezz Borrower II, LLC*, 461 B.R. at 299-302 (dismissing bankruptcy with prejudice where debtor in a two party dispute had no operating business to reorganize and filed its petition to avoid foreclosure).

**B.     Debtor's Inability to Effectuate a Plan Constitutes Additional "Cause" for Dismissal Under § 1112(b)**

40.     Under § 1112(b)(4) of the Bankruptcy Code, "substantial and continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" constitutes independent "cause" for dismissal.  11 U.S.C. § 1112(b)(4)(A)-(B).  As the Debtor has no cash flow and no "going concern" to preserve in bankruptcy, its estate faces a serious threat of loss or diminution resulting from the accrual of Chapter 11 administrative expenses.  This case must be dismissed based on this economic reality alone.  *See In re Jer/Jameson Mezz Borrower II, LLC*, 461 B.R. at 304; *see also In re Humble Place Joint Venture*, 936 F.2d at 818 (affirming dismissal where there was no business to reorganize and the "risk to secured creditors of continuing [the] Chapter 11 case outweighed the benefit to [debtor]").  Here, there is no ongoing business to reorganize and the value of the pledged, illiquid Collateral will not provide full recovery to Eucla, Debtor's only secured creditor.  No plan of reorganization is possible.  Thus, even if the Debtor had commenced its case in good faith, dismissal is still mandatory under § 1112(b)(4).

19

## II.   ALTERNATIVELY, THIS COURT SHOULD DISMISS THIS CASE PURSUANT TO § 305(a)

41.    Alternatively, the Court should abstain from exercising jurisdiction over Debtor's bankruptcy case and dismiss it pursuant to § 305(a)(1) of the Bankruptcy Code.   Section 305(a)(1) empowers bankruptcy courts to dismiss a bankruptcy case at any time if "the interests of creditors and the debtor would be better served by such dismissal."   11 U.S.C. § 305(a)(1). Generally, abstention under § 305(a) is called for in cases where state courts or another forum are capable of resolving the parties' disputes without the need for bankruptcy-specific remedies, or where failing to dismiss or abstain would impose unnecessary costs, delays, and burdens on creditors and other parties-in-interest. *See, e.g.*, *In re White Nile Software, Inc.*, 2008 WL 5213393, at *9-10 (holding that "fairness and the importance of discharge to the debtor," as well as "access of the parties to a pending state court forum [and]  . . . the necessary complexity of the bankruptcy process, and efficiency and economy of administration," must be considered); *In re Argus Grp. 1700, L.P.*, 206 B.R. 737, 755 (Bankr. E.D. Pa. 1996) (dismissal warranted where "needless additional expenses" would be incurred if bankruptcy case continued, particularly where it was "inefficient to have [bankruptcy court] utilize its resources" to administer bankruptcy case with no reorganization purpose); *In re Beacon Reef Ltd. P'ship*, 43 B.R. 644, 646-47 (Bankr. S.D. Fla. 1984) (ordering dismissal and abstention in light of the expense and complexity of the bankruptcy process, holding that the "sometimes cumbersome mechanism of the Bankruptcy process [was] not essential for justice to be accorded"); *In re Colonial Ford, Inc.*, 24 B.R. 1014, 1021-23 (Bankr. D. Utah 1982) (finding that "interests of creditors are better served by dismissal" in accordance with § 305(a)(1)) (internal quotations omitted).

42.    Under § 305(a)(1), courts consider a wide range of factors to determine if dismissal or abstention are warranted, including but not limited to the interests of creditors and

the debtor, fairness and the importance of discharge to the debtor, the number of creditors, the complexity of the bankruptcy process and efficiency and economy of administration, the presence of preference or avoidance actions, and the availability of another forum to resolve pending disputes.  *See In re White Nile Software, Inc.*, 2008 WL 5213393, at \*9-10 (dismissing case under § 305 where there were no causes of action that warranted bankruptcy court expertise and Chapter 11 proceeding was filed to avoid state court litigation that was already pending in a convenient forum); *In re Argus Grp. 1700*, 206 B.R. at 755 (affirming dismissal of two party dispute involving issues of state law where there was no active business to restructure).

43.     These factors warrant dismissal here.  The Debtor only has one non-insider creditor (Eucla), which will not benefit in any way from a prolonged bankruptcy process. Continuing this case will only cause further diminution of the estate, which consists of no liquid assets and one illiquid asset (an equity interest in American Ethane) that is already pledged in its entirety to Eucla.  The Debtor's Schedules identify no avoidance or fraudulent transfer issues for adjudication by this Court.  Nor do they identify any leases or contracts that could benefit from assumption/rejection in bankruptcy, or any other assets that would derive a specific benefit from a § 363 sale under the Bankruptcy Code.  The Schedules also do not identify any other pending litigation claims against the Debtor.  *See* Ex. I at 8 (ECF No. 13); Ex. J at 2, 6-8 (ECF No. 14). Coupled with the fact that Debtor filed this case solely to delay Eucla's lawful exercise of state law remedies, these considerations fully warrant dismissal under § 305(a).  *See In re White Nile Software, Inc.*, 2008 WL 5213393, at \*4 (dismissing petition under § 305 where petition was filed to avoid state court claims and state court provided convenient forum for the parties to resolve their ongoing litigation); *see also In re Beacon Reef Ltd. P'ship*, 43 B.R. at 646-47

(dismissing case and abstaining where partnership dispute could be resolved in state court and there were no other creditors or circumstances warranting bankruptcy-related expense).

44.    Finally, and critically, in the absence of the automatic stay, Eucla and the Debtor can readily resolve their two party dispute in the New York forum that Debtor previously agreed would be an appropriate venue for litigating such disputes.  Dismissing this case will not have any impact on the value of the illiquid equity interest that was pledged to Eucla.  Indeed, given that the Debtor has no operating business and no arm's-length creditors besides Eucla, no more value could be created for the Debtor or its creditors inside of bankruptcy than could be realized through the ordinary collection and other measures that would be available under the UCC and New York law.  Under these circumstances, this Court's resources (and Eucla's) should not be wasted on this matter, and Debtor has no legitimate reason to be before the Court.  *See In re Colonial Ford, Inc.*, 24 B.R. at 1021-23; *see also In re Argus Grp. 1700*, 206 B.R. at 755 (dismissing case under § 305(a) where two party partnership dispute only implicated questions of state law).  The Court therefore should dismiss this case pursuant to § 305(a)(1) of the Bankruptcy Code.

## III.    DISMISSAL SHOULD BE WITH PREJUDICE PURSUANT TO §§ 105(a) AND 349(a)

45.    Section 349(a) of the Bankruptcy Code provides that:

[u]nless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar a discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

11 U.S.C. § 349(a).  Pursuant to § 105(a) of the Bankruptcy Code, the Court also may "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, *or to prevent an abuse of process.*" 11 U.S.C. § 105(a) (emphasis added).

46.     A bankruptcy court thus may apply its inherent powers under §§ 105(a) and 349(a) to dismiss a debtor's Chapter 11 case with prejudice and preclude subsequent filings where the debtor has commenced its bankruptcy case for an improper purpose or in bad faith. *See In re Casse*, 198 F.3d 327, 336 (2d Cir. 1999) (affirming dismissal with prejudice where debtor made three successive Chapter 11 filings to prevent lender from foreclosing on debtor's house); *In re White Nile Software, Inc.*, 2008 WL 5213393, at *4 (dismissing bankruptcy case with prejudice for 180 days under Section 305(a)(1)); *see also In re Garcia*, 479 B.R. 488, 499-500 (Bankr. N.D. Ind. 2012) (dismissing Chapter 11 case that was filed in bad faith, barring one debtor from seeking bankruptcy relief for one year and the other debtor for three years). Notably, in *In re Jer/Jameson Mezz Borrower II, LLC*, a case with a strikingly similar fact pattern, the court dismissed the debtor's petition with prejudice under the same basic circumstances present here.  461 B.R. at 304 (dismissing case involving two party dispute where debtor's sole asset was an equity interest already pledged as security to its lender, holding that "[b]ecause the Court finds that the [debtor's] petition was filed in bad faith and for no legitimate bankruptcy purpose, it finds cause under section 349(a) to make the dismissal with prejudice").

47.     Here, dismissal with prejudice is necessary to prevent the Debtor from filing successive petitions or to further frustrate Eucla's rights with respect to the pledged Collateral.  The Debtor's bad faith filing provides ample justification for this relief, and no legitimate interests would be served by allowing Debtor to refile without first seeking leave of this Court.

## CONCLUSION

For all of the foregoing reasons, Eucla respectfully requests entry of an order (i) dismissing the above-captioned Chapter 11 case pursuant to §§ 1112(b) and/or 305(a) of the

Bankruptcy Code, with prejudice, and (ii) granting such other and further relief as may be just and appropriate.

Dated:  November 1, 2016

Respectfully submitted,

**ADAMS AND REESE LLP**

*/s/Robin B. Cheatham*
Robin B. Cheatham
Northern District of Texas Bar No. 18036
Scott R. Cheatham
Texas Bar No. 24050406
Adams and Reese, L.L.P.
4500 One Shell Square
New Orleans, Louisiana 70139
Phone: (504) 581-3234
Fax: (504) 566-0210
Robin.cheatham@arlaw.com

-and-

FRIED FRANK HARRIS SHRIVER &
JACOBSON LLP
Stephen M. Juris, Esq.
Jennifer L. Rodburg, Esq.
One New York Plaza
New York, New York 10004
Phone: (212) 859-8000
Fax: (212) 859-4000

***Attorneys for Eucla Investments Limited***